for the U.S. Department of Labor et al., Daniel Petro, former Inspector General of the Office of the Inspector General for the U.S. Department of Labor and his official and or official capacities et al., Appellants, Mr. Schultz for the Appellants, Mr. Keonega for the Appellees. Mr. Schultz. Thank you, Your Honor, and may it please the Court, Benjamin Schultz on behalf of the Defendants Appellants. As the Supreme Court has recently clarified and as this Court has also recognized, implying a Bivens remedy is a disfavored judicial activity and one that should not take place when either there is adequate alternative remedies or when there are special factors counseling hesitation. And this case presents both. There are a number of grounds that we presented in our brief for why that is the case. And several of those were not presented before the District Court. Isn't that right? Your Honor, we did not specifically articulate the Privacy Act and the APA as among the special factors counseling hesitation. I'd be happy to explain why we think the Court can reach those issues nonetheless if the Court has questions about that. I assume it's because you did cite the Libby case twice below. Is that right? Well, I believe we did cite that case. But in any event, Your Honor, there's a couple of reasons why I think the Court could reach the Privacy Act and the APA if it wanted to. One is that we did argue to the District Court that no Bivens cause of action existed. And we think that in this context, saying a particular reason for why a Bivens cause of action exists is not a separate argument, but it's just additional support in support of the claim. It's merely a separate argument. Well, Your Honor, even if the Court disagrees with that, I think everyone agrees, and certainly we understood the opposing counsel's brief to recognize, that this Court has discretion to reach arguments that might otherwise be deemed forfeited. And here there's a couple of unique facts about this case that we think the Court should exercise its discretion if it wanted to reach the Privacy Act and the APA. And, of course, we think we've presented a number of additional grounds so that the Court doesn't need to reach those. But, first of all, here you have the unique circumstance where the District Court didn't actually reject our argument that a Bivens cause of action was unavailable. And you didn't seek reconsideration on that, did you? Your Honor, we elected not to. We thought that we would seek reconsideration on another issue. Perhaps, in retrospect, it might have been better if we had sought reconsideration. What would your grounds for reconsideration have been that District Court considered it and decided he just did not want to decide that one? You would have no new evidence, no new argument, no additional reason to. I think Your Honor is right that we would have had to persuade the District Court that it should consider an issue that the District Court said that it didn't want to do. Perhaps, strategically, we should have tried to do that. We elected not to. It's not like the District Court missed the point. The District Court discussed the point and said, well, you know, we just don't want to decide this one today. That is how we read the District Court's opinion, that the District Court did not want to decide the issue because it thought that the due process claim was very, very weak and thought it was unnecessary. Let's talk about that. I'm interested, really, in putting aside the Bivens and special factors and alternative schemes analysis, just looking at the constitutional claim and the qualified immunity question. Can you, in a really fact-based way on this pleading, give us your view on that question? Absolutely. And here I think it's important to distinguish between two sets of defendants, Petroli and Harris versus Berry. So starting with Petroli and Harris, here, keeping in mind that the question is individual liability, so it has to be those individual defendants themselves that committed a constitutional violation. We believe that none of the pleadings show that either Petroli or Harris abridged a liberty interest of lifts. And that's because, reading this Court's case law and the Supreme Court's case law, pure damage to reputation does not infringe a liberty interest, no matter how grave the consequences for an individual's future employment prospects. And that's because these contracts were finished by the time the report came out. That is correct. Both Petroli and Harris are Department of Labor officials. There's no indication that they took any action or that he was even bid on another contract with the Department of Labor or the Department of Labor Inspector General's office. And so if any intangible action was taken against lift, it would have been taken against lift by somebody else. Is it the somebody else or is it the chronology? I mean, if somebody in an agency issues a report that's very damaging, I mean, we haven't in Curtsiva, in Dominion, in O'Donnell, in our various cases, we haven't parsed and limited the causal flow from somebody's action. Is that what you're relying on? Which person can be held responsible or are you relying on the fact that there wasn't an accompanying adverse action? It gets complicated because there's two strands of this Court's case law. There's the reputation plus and the stigma plus. When we're talking about reputation plus, which is not a theory that I think the district court adopted, then you would actually look at whether or not it happened at the same time. But are you also under stigma plus having to look at some – well, I guess here it's the de facto debarment. And so you're saying that that's – for the theory that's enough? Well, Your Honor, again, I think if their theory were different, if they were saying that Petroli or Harris had actually taken some action that debarred him in a binding sense, in an automatic sense, which is their theory as to Barry, then perhaps the analysis would be different. But that's not their theory as to Petroli and Harris. Their theory is that what they said about Lyft was so bad that he just couldn't get any more work. And the problem is that that is exactly what the plaintiff in Siegert was saying. He was saying, this is what you said about me, and it was a really, really negative recommendation that the defendant in Siegert had given. And the allegation in Siegert was that he was unable to obtain other appropriate employment in his field. And the Supreme Court said, regardless, your injury still flows from reputation, so it's not a liberty interest. And we don't think that this court's decision in Kartseva, which we recognize is somewhat difficult to parse, but we don't think that this court in Kartseva ruled anything that is inconsistent with the Supreme Court's decision in Siegert. And the most that can be said about Kartseva was that there is some dicta that is in tension with Siegert. But – and Siegert doesn't make the move that I took you to be making, which is these individuals weren't responsible for the sequelae of the report. Your Honor, in Siegert – Siegert was a Bivens action. And so the defendant in Siegert was the individual who had given the negative recommendation. And I don't think there was any allegation that that individual had, following the issuance of the recommendation, then done something in a binding way to not hire that other individual. The individual looked for other jobs with other employers and just was unable to get them. Right. I take your analogy to Siegert. I was just probing the source of what I took to be your first answer to my question about why there's no constitutional claim against Harris & Patrol. And I thought it had to do with these individuals being responsible for part of what happened. And I wasn't sure I saw precedent for that particular way of spinning it. So perhaps maybe I'm not answering Your Honor's question quite the right way. What I think is doing some work here is the Supreme Court's clarification that when you look at Bivens actions, it has to be the individual defendant, the individual Bivens defendant, who has committed a constitutional violation. And so let's take a step back and look at the constitutional violation that is being alleged here. It is that the defendant abridged a liberty interest without providing the individual due process. So that means that if you were going to say that an individual defendant committed that violation, you have to show that that defendant abridged a liberty interest without providing due process. And Your Honor, I think their claim is there was a very injurious report that these defendants were responsible for releasing without giving Mr. Liff an opportunity to address the statements and implications about his malfeasance and fraud or similar misdeeds. And your response to that is? And our response to that is we're not disputing at this stage the allegations that this caused reputational damage, but that did not complete the constitutional violation. The constitutional violation, if any occurred, was only complete once. In addition to that reputational damage, he also suffered tangible adverse action, and that that tangible adverse action occurred without the provision of adequate process. So for example, if some other official had acted on the report but had given Liff a hearing and sufficient notice and et cetera all before taking that action, then there might not have been any constitutional violation at all. And you're saying there's no allegations that he sought and was denied further labor department contracts and therefore? Well, Your Honor, I think it would actually even have to be more than that as to the individual defendant. And he would have to show that either Petroli or Harris was somehow involved in the actual tangible adverse action. What if we thought it was enough that it was the labor department or someone else in government, foreseeable effect of what you did? I mean, typically. That was Siegert, Your Honor. Siegert, I mean, there was no doubt that when an employer asked the defendant in Siegert, hey, we have to certify this guy, can you give him a recommendation? And the recommender in Siegert said, this is the most unethical guy I've ever worked with. I can't recommend him for certification. There's no doubt that he understood what the consequence of that would be and mean. There was an allegation in Siegert that this was maliciously done, that it was intentional. And the Supreme Court said, nonetheless, that's an injury that flows from reputational damage and it does not infringe a liberty interest. And in part because the doctor, Dr. Siegert, was able to get a bunch of other work. It was one or two instances where he was shown to have been foreclosed. No, Your Honor. I don't think that's the facts of Siegert. The individual was given temporary work pending the question of whether or not he would get the certification. Then they sought the recommendation, and the recommendation came in, and the recommendation was highly negative. And at that point, he couldn't get certified. The allegation in Siegert, which, remember, that was decided at the motion to dismiss stage. The allegation in Siegert was he was unable to obtain other appropriate employment in the field as a result of that negative recommendation. Are you relying on process that was, in fact, given to Mr. Liff? I'm sorry? Are you relying on the adequacy of process that was, in fact, afforded to Mr. Liff? As to Barry, we are making that argument, yes. I can discuss it with the court once, but our position is that the facts, as alleged, do not show that any action that Barry took against Mr. Liff were done without sufficient notice of process. Because I understand the alleged constitutional violation here is issuing these reports without providing an opportunity for Mr. Liff to rebut the points in them, something like that, right? I think that's fair. Without at some point in the process having had an opportunity to give his side of the story. I think that's a good characterization. Here's my question to begin. Paragraph 79 of the complaint says, Defendant Petroli, at all relevant times, the Acting Inspector General, negligently conducted and supervised an investigation. Is there such a thing as a negligent violation of due process that would overcome qualified immunity? How can it overcome qualified immunity if it's negligent? Well, Your Honor, I think certainly when you're talking about negligent supervision, the clear answer is that that is insufficient. Is there any allegation here that Mr. Petroli knew that the investigators didn't provide him an opportunity to state his side of the story? Your Honor, I have to go back and look at that. There are some kind of catch-all allegations that may not be specific enough. But regardless, I think the argument that we are presenting to the court is that there's no liberty interest that was infringed. And whether or not you think that there was some... I want to assume there was a liberty interest. Sure. But each of the three people didn't know. They assumed that the normal Inspector General processes were followed, the ones that opposing counsel points out are supposed to follow. If the people who, in the end, release the reports, in order to establish a violation that overcomes qualified immunity, don't they have to know that there's been a violation of the person's constitutional right, assuming there is a constitutional right? It would be hard, given the Supreme Court's admonition that it is an individual's own actions, and only that individual's own actions that can create a constitutional violation. It's not just that. The court says you either have to be incompetent, or I don't know what the other word was. Knowingly violate the law. Knowingly violate the law. I'm sorry. So Your Honor is asking for purposes of qualified immunity. Just so you know, I'm not trying to trick you here. The answer is yes. Certainly, Your Honor, if it was not clear, then absolutely, the individual would be entitled to qualified immunity. And if the individual did not know, because the words of the Supreme Court opinion, as my colleague kindly points out, include, no, unless there's evidence or an allegation that the person knew that, in this case, the violation, which is the failure to provide an opportunity to be heard, happened, you can't have overcome qualified immunity. Isn't that right? I think Your Honor is right. And there are a number of different ways to resolve the case. And if the court wants to resolve it on qualified immunity, that is certainly an available ground. I do more arguing qualified immunity. I'm sorry? You are arguing? We have absolutely presented qualified immunity as one of the grounds on which this court can rule. But I do want to spend at least a little bit of time talking about Bivens, because there are a number of grounds that we have presented as to why I don't think the court needs to reach any of the issues at all about qualified immunity. And in particular, I want to focus the court's attention on the contractor remedies. Now, we think these are adequate alternative remedies, but the court doesn't even need to go that far. All that the court needs to conclude is that there's a special factor counseling hesitation. And so there's no need to parse the exact contours of what exactly you can get under these contractor remedies and precisely what claims you can give. All that the court needs to recognize is that- So help us understand that process. If Lyft is wanting to apply for more contracts and he's bidding, and he's concerned that somebody in the federal government might be checking on his past contracts and might find out something that they would, in his view, improperly weigh, when and what can he do to remedy that? Sure. I'm assuming, for current purposes, that what's in the reports is actually erroneous. Sure. So among the things he can do, and I see my time is up, but to answer your Honor's question, the Court of Federal Claims has itself recognized that if you're alleging that the reason you were denied a contract was because of a de facto debarment that violated your due process rights, you can challenge that in the Court of Federal Claims and say, hey, the reason you didn't give me this contract was an improper reason and I want to- After the contract has already been let to someone else. I don't think that actually there's a requirement that you wait until award. I believe there's also language about a proposed award. But that's only if the contract does something in a two-step, if the contracting agency proposes and then finalizes, which is not necessarily always the case. Your Honor, I'm not sure that there are any allegations here that he has bid on anything that wouldn't come from a solicitation. My understanding is typically the way that government contracting works is there's a solicitation, and then you bid on it. Perhaps there may be some really small-value contracts that don't fall into that category. I'm not entirely sure about that. But I think what all of your Honor's questions are getting at is maybe there's some disputes we can have as to whether this was entirely a sufficient process if you wanted to raise a constitutional violation. I'm just trying to understand what's in the ballpark. And one of my concerns about the fact that the grounds, the Privacy Act grounds and other grounds were not raised in the district court is it just hasn't been fleshed out. It hasn't been fleshed out. And, for example, under the Privacy Act, it sounds like when I read my court's cases on the Privacy Act and, you know, not from things that are in the briefing, that maybe the Privacy Act is a very useful remedy here and would fall in that category of a substitute under Bush v. Lucas and Troika v. Chaliki. But, for example, can he go to the government and say, Look, you're keeping some records. They include information about me. They're wrong, and I want a chance to supplement or challenge those. That's the kind of thing that sometimes takes place under the Privacy Act. But, you know, we need to know how far afield these schemes are, and we don't have much. So, if Your Honor is asking, Does he have a viable Privacy Act claim? I think the answer is we don't know at this stage. But the really important thing that I want to make sure the court understands is that's not the right question to ask. We understand that it doesn't have to be a perfect substitute. It doesn't have to provide the exact same remedies. It doesn't have to provide damages where damages are available. We understand all of that. But there is an inquiry about whether Congress intended this to be the remedy for claims in this neighborhood. And that's what I'm asking. Your Honor, I would agree with sort of that neighborhood inquiry. And just as to that, I think the fact that we're even talking about the possibility of a potential Privacy Act claim shows that it's in that neighborhood. The other thing that it's definitely in the neighborhood is the contractor claims. And in the contractor's view, if there's one thing that's clear from all the contractor remedies, it's that Congress really prioritized injunctive relief and not damages. Congress was saying, Hey, if we gave this contract to the wrong person, tell us about it quickly while there's time to correct it and give it to the right person. We don't want to have to pay twice where we have the whole contract performed by A, and then we learn that B comes years later and wants damages because B should have had the contract. I just have one other question. Under Wilkie, as you read it, this court has jurisdiction to decide the scope of the Bivens remedy. That's right. But as I understand that, that's an exercise of pendant appellate jurisdiction. We also have discretion not to reach that. I don't read Wilkie that way. If you read the court's footnote in Wilkie, what the court said was that it is tied up in the qualified immunity analysis. Which is the inquiry for pendant appellate jurisdiction. I think Wilkie is a Swint v. Chambers County Commission case. It is. And I don't understand the Supreme Court in Wilkie to have ever used the words pendant appellate jurisdiction. And instead, it said it was tied up in the qualified immunity analysis. And, frankly, I just don't understand, given that, how this court would have any discretion to refuse that. I actually have a ‑‑ maybe I'll put this question in a stronger way. A constitutional decision was reached by the district court in this case. Is that right? That's right. And the court perhaps could have avoided the constitutional question by deciding the Bivens question first. It could have. And I thought that was an obligation on every court to first try constitutional avoidance in a case where it is not clear, at least, what the constitutional issue is. And, obviously, in this case, it's not clear, even if it, in the end, ends up where the plaintiffs want it. I think there are strong arguments that a court should, at the very least, avoid constitutional rulings when it can dispose of a case on a ground such as no Bivens remedy. And that would be particularly true in a situation where the Bivens defendants would otherwise have to go through discovery that they are entitled not to have to go through because there is no Bivens cause of action. There are no ‑‑ Okay. We'll hear from the other side. Thank you. Thank you. Good morning, Your Honor. Paul Kiyonaga on behalf of Stuart Lev. First, in their brief, they misquote Koch. And I want to raise the first point raised by Your Honor. Koch says, quote, rather than raising a new issue upon which the district court did not rule, Koch is inducing additional support for his side's an issue, and they didn't include this language, upon which the district court did rule, much like citing a case for the first time on appeal. Therefore, the Privacy Act argument and the APA argument are not properly before this court and should not be considered. I take, however, Your Honor's point that on the issue of the Privacy Act, there is not sufficient evidence on this record to make it a ‑‑ Can I ask why there isn't? We have the words of the Privacy Act, and we have our own case law, McCready, for example, which finds a Privacy Act violation in an OIG report that is incorrect. And the words of the Privacy Act provide a cause of action when there is and when an agency fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to, et cetera, et cetera. Now, that on its face seems like it would apply. Two points, Your Honor. First of all, how can that apply to Barry? How does it apply to an individual who stands up, take the OPM, and instead of going through all the procedures that have been set up, the suspension, debarment, adverse responsibility determination, says this man will never work for OPM again, and therefore not the 150 agencies that we worked through. How is that something that is encompassed by the Privacy Act? Looking back at the OIG ‑‑ Because it's based on the disclosure of an inaccurate report, which you could sue for, both for the disclosure but also for the inaccuracies of the report. And in OPM, if there actually was a de facto debarment in that circumstance, you could bring an action under the various statutes that allow you to appeal debarments. Well, Your Honor is assuming that his determination was not a judgment, that it was based factually on a certain report, which is subject to the Privacy Act. These are all issues that need to be fleshed out, Your Honor, to determine on discovery if that is, in fact, accurate. This argument wasn't even raised. In Libby, we said it doesn't even matter if three of the defendants could not even be found liable under the Privacy Act. Three of the, I think, five defendants in Libby were protected because they were in the office of the vice president and the president, right? And we said even if they can't be reached at all, as long as there's a statute that appears to cover at least some of this, the fact that Congress didn't provide even a defendant in the case liability wouldn't end the matter. So I understand why this isn't on the face of the Privacy Act. Two reasons, Your Honor, because we're not talking as in Libby, as in McCready, about something which relates specifically to the dissemination of a record. We are talking about a course of conduct, Your Honor. We are talking about the fact that they did an IG report. Then they made the separate, distinct decision to not redact his name, even though they had redacted the names of other individuals. That's also covered by the Privacy Act, the redaction of the name. Yes, but then we're talking about a de facto debarment, a cancellation of an OPM contract. Right, and that can be challenged, the cancellation of the OPM. We were talking a few minutes ago, well, we don't know about situations where things didn't actually happen, but here something actually happened. There's a cancellation of a contract. That can certainly be challenged. But that is part and parcel of the larger constitutional tort that occurred here, Your Honor. There's a course of action between DOL, OIG, and DOL and OPM that constituted individually as well as collectively. You would agree that this is not covered by anything that the Supreme Court has previously said is a constitutional tort, right? What do you mean by that, Your Honor? I'm afraid I'm the one supposed to ask you the questions. No, no, when you say that, I want to answer that. I mean in the meaning of Ziegler versus Abrasi, where the court said if the case is different in a meaningful way from previous Divens cases decided by this court, namely the Supreme Court, then the context is new. And the court then said we've done it three times. A, a claim against FBI agents for handcuffing a man in his house without a warrant, a claim against a congressman for firing his female secretary, and a claim against prison officials for failure to treat an inmate's asthma. Anything that's not in those three is a new context. Your Honor, I quibble with that. I don't think that if you look at the actual test that Ziegler sets forth for what constitutes a new context, it talks about rank of officers. It talks about the constitutional right at issue. It talks about the generality or specificity of the official action. Well, I think that's the way we used to read these things. But that's not the indication in Ziegler that we're supposed to continue to read it that way. That is the language from Ziegler. Show me that language. I can cite it to you, Your Honor. I have Ziegler, and it's also, by the way, contained in Conroy at 2017 opinion by this court where it talks about how you have to look at if it's different in a meaningful way. So if you want to look at Conroy. Well, that is the language from – that's only a quotation of the language from Abbasi, and then it goes on and explains what that means. Right. Abbasi. Has the Supreme – well, that's Ziegler versus Abbasi. Right. I was calling it Ziegler. It's all right. It's all right. For Mr. Ziegler, I think he was a sergeant at arms or something. Has the Supreme Court ever ruled that a violation of procedural due process is covered by dividends? I don't believe the Supreme Court has. Right. But certainly this court in Kartseva and the Second Circuit in Arar, citing Tellier, did find that a procedural Fifth Circuit liberty interest was cognizable on the dividends. And in FDIC v. Meyer, Judge Thomas noted that whether or not a Fifth Amendment dividends action is viable depends on the circumstances, and that is the teaching of Abbasi. The problem, though, is in Abbasi or Ziegler. Right. It says, meaningful way from previous dividends cases decided by this court, not by some other court, not by courts. When the Supreme Court wants to give some deference to those of us in inferior courts, it knows how to say that. And often that is the rule in other kinds of situations. But here, whether you like it or not, the Supreme Court's decision clearly indicated a new way to be thinking about dividends. And the first question is whether the Supreme Court has ever found dividends under these circumstances. And this is not any of the three kinds of cases that the court has ever found a dividends action. Respectfully, Your Honor, I don't think that that is the teaching of Abbasi. I think Abbasi said that they are disfavored dividends actions, but not disallowed. Oh, no, I agree with you. The first question is context, and the second question is special circumstances. That's right. I'm only asking the first question. Is this a new context? As to the first question, Your Honor, I wouldn't concede it's not a new context, because if you look, for example, at Davis v. Passman. You wouldn't concede it is a new context? That's right. If you look at Davis v. Passman, it was actually brought under the due process clause of the Fifth Amendment. It was actually brought under the equal protection clause. But if you look at the actual language of it, it says this is an action under the due process clause of the Fifth Amendment. The equal protection guarantees. It has to be rewrote. Equal protection, polling versus chart. Reverse incorporated. But I understand the point, Your Honor. But my point is that if you look at the factors, which I cited earlier, for what constitutes a new context for Abbasi, really, Lyft falls cleanly within these. The only one that's really an issue is whether or not a new constitutional right is at issue. And I think it's a close question when you look at Davis v. Passman. But even if this Court were to say under Abbasi, all right, there is a new context here in Lyft, that's not the end of the analysis, obviously. Then you go into basically the Wilkie factor of whether or not there's an adequate alternative remedy or whether or not there's special factors. And there, the adequate alternative remedy, if you look at what this Court has taught, not this Court, but the Supreme Court has taught in Bush and Schweiker v. Chalicki and all these cases, those cases are all based on indubitably comprehensive schemes for administering public rights and providing remedies for those who don't have those rights provided. And what do you think about Libby, then? About, I'm sorry, which? Libby. Well, Libby involves the Privacy Act, Your Honor, and Your Honor had asked earlier about the Privacy Act. No, no, but you said those other cases all involve comprehensive rights that provide. Correct. But Libby made clear that it doesn't have to provide rights for all the defendants, doesn't have to provide rights for all the kinds of claims that the person's making, right? Fair enough, Your Honor. It looked at the comprehensiveness of the remedy, not the adequacy of the remedy, and I recognize that language in Libby. But when you look at the issue, you say to yourself, and Abbasi teaches, is there a reason to believe that Congress has essentially occupied the field in this area? Here we're talking about an ostensibly incorrect report. Why is the Privacy Act not a very well-matched scheme for addressing that? Somebody says, wow, this inspector general report in the process of investigating Johnson has included a lot of things that are incorrect about me, so I want to go to those record holders and tell them you have inaccurate information. Let me address it. It seems like that's just the kind of relief that one would, in the absence of Privacy Act, be seeking under procedural due process. But this scheme is more particular, more tailored to government record retention. Why isn't it fitting? Because as in Libby, Your Honor, the course of conduct that is alleged in a complaint goes far beyond what Libby was about, which was the disclosure of a fact of covert operative status. The same thing was true in the Greedy. It involved an IG report, but in that case that was it. And the same thing in Downing. And the fact that there might be that level of factual distinction helps you how? Because those cases are limited to the application of the Privacy Act for the act of disclosure. What we have here is not simply the act of disclosure. We have the act also of publication, which if you look at Crooks and Payne. You were asking earlier, Your Honor, about Siger and whether or not there's a line between Siger and Partseva. One of the lines that I believe is important to distinguish and take into account here is the fact that they publicize a report. If you look at Crooks and you look at Payne, which is the court's opinion, the fact of publication was very important to take it from a sort of Siger position to a stigma-plus position. And my point, Your Honor, is that if you look at the array of actions that happened here, you've got an ELLIG report, which is infirmed from the judge. But then they make the decision not to redact his name, even though they redacted a lot of other people's names. And then they publicize it on the web. And then they get an ELLIG report to come back. But wouldn't the remedy for that for Mr. Liff be to fix that information so that it no longer is, as a virus, continuing to infect his future opportunities? But, Your Honor, respectfully, at that point, what happened was a train of events that led to him being de-facto barred, broadly subdued under the language of Partseva. It happened individually by the DOL, OIG, after Mr. Trojan, and also by Mr. Harris. Let me flip it. What's the remedy you would think would be appropriate? Well, I've set forth a ton of remedies in the complaint documents. I noticed. Can you tell us, in terms of injunctive relief? Well, in terms of injunctive relief, certainly it could include, as it seems to me, correcting and fixing down the OIG report. But we've asked for injunctive relief in the form of paying for some sort of effort to re-advance his reputation, to keep this from happening. Is there any case that we've decided, or the Supreme Court has decided, that affords that kind of relief for a procedural due process violation? Well, I think that in Divins, they're allowed to infuse damages. That's a separate question. And your compensatory damages flow from what? The compensatory damages flow from the constitutional violation at issue here, which has led to his de-facto debarment. And those are actual damages that he would prove the value of contracts that he would have obtained but for this reputational harm? Well, yes, Your Honor. If you look in the complaint, I have set forth the actual percentages, the amount of money that he lost in the before and after picture. He lost 97% of his income. He is just a government contractor. He doesn't have a soccer team. He is an HR, government contractor. Immediately upon the issuance of this report, his business took a complete nosedive. The coup d'etat was when they canceled the OPM contract and then stood up without any process. How can it be, Your Honor, that the Privacy Act would encompass an action by Defendant Barry standing up without going through any of the very detailed comprehensive procedures to debarring somebody? But what about all the contract remedies? Well, those, Your Honor, relate to the contract. If there is a dispute about contract or something that arises from a contract, but as in the Bob Safavi, which is a very important case that this Court affirmed the denial of a motion to dismiss by Judge Hubel, there, there was a First Amendment and a Fifth Amendment conviction. And Judge Hubel, they raised the exact same argument that the CBA precluded. And she said, no, the source of the right is the constitutional violation, not a dispute relating to contract. I mean, the idea that the government has here, that these various fines and contracts cure the magnitude of what has occurred here, this isn't Lyft saying, I dispute the administration of this contract. I dispute the bid protest here. And to the point asked earlier, where they said, well, can't you stand up and do a bid protest? If you look at one of the cases cited, which I believe is maybe Nebraska Beef, there, or no, actually, it's NDL Logistics. There, they said, in the context of an individual bid dispute, you can make a claim that you've been debarred, but we will not get to the underlying issue of whether or not the debarment should be declared a nullity. There is no argument, I think, that is credible here that the CDA somehow cures the entire magnitude of the constitutional violation at issue, Your Honor. I think we're out of time unless the judges have questions. Thank you. Thank you, Judge. And is Mr. Schultz out of time? Okay. We'll give you one. He went over one minute and 30 seconds. You can have one minute and 30 seconds as well. Thank you, Your Honor. I just wanted to spend one minute explaining why I think this Court can reach the Privacy Act. In particular, I know the Court is concerned about the possibility of waiver, but there's two facts about this case that make it rather unique. One is that this is an interlocutory appeal, and nobody disputes that at summary judgment the defendants would be able to raise the Privacy Act. And given that it's a pure question of law, the most efficient thing to do would be for the Court to just rule on it now. But even if the Court is concerned about backgrounds, another fact that makes this case extraordinarily unique is that the district court never actually rejected our argument about Bivens. It just said that it wasn't going to rule on whether or not Bivens was available at all because it thought that the plaintiff had stated a very, very marginal due process claim. And I think those two facts together make this a sufficiently unique case that this Court should exercise its discretion and rule on the Privacy Act grounds. That's why I wondered if you didn't seek reconsideration and point to Wilkie and say, look, this is something that is part and parcel of the cooperative immunity issue, and therefore, if you're denying on that, you really need to pass on this. Your Honor, as this Court well knows, it's discretionary whether or not to file a reconsideration motion. We understood the district court's order as basically inviting a reconsideration motion on the statute of limitations issue, which the Court thought had been sufficiently briefed, and we directed our attention to that issue. I understand. I'd be happy to address any of the other things if the Court has questions otherwise. We'll take the matter under submission. Thank you very much.
judges: Garland, Pillard, Wilkins